1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - -x

5  In the Matters of:

6                                    Case No. 16-10455-shl

7  BH SUTTON MEZZ LLC,

8            Debtor.

9  - - - - - - - - - - - - - - - - - - - -x

10  SUTTON 58 OWNER LLC,              Case No. 16-10834-shl

11            Debtor.

12  - - - - - - - - - - - - - - - - - - - -x

13

14            United States Bankruptcy Court

15            One Bowling Green

16            New York, New York

17

18            April 7, 2016

19            11:18 AM

20

21  B E F O R E:

22  HON. SEAN H. LANE

23  U.S. BANKRUPTCY JUDGE

24

25

Doc. #14 Motion for Relief from Stay / Sutton 58 Associates

LLCs's Motion to Dismiss This Chapter 11 Case Pursuant to

Bankruptcy Code 1112(b) or in the Alternative to Modify the

Automatic Stay Pursuant to Bankruptcy Code 362(d)(1).


Doc. #25 Application to Employ LaMonica Herbst & Maniscalco,

LLP as Counsel for the Debtor and Debtor-In-Possession.


Doc. #49 Motion for Joint Administration filed by Jordan C.

Pilevsky on Behalf of BH Sutton Mezz LLC


16-10834-shl Sutton 58 Owner LLC

Status Conference Re:  New Chapter 11 Filing


Transcribed by:  Penina Wolicki

eScribers, LLC

700 West 192nd Street, Suite #607

New York, NY 10040

(973)406-2250

operations@escribers.net

```
 1
 2  A P P E A R A N C E S :
 3  LAMONICA HERBST & MANISCALCO, LLP
 4          Attorneys for Debtors
 5          3305 Jerusalem Avenue
 6          Wantagh, NY 11793
 7
 8  BY:   JOSEPH S. MANISCALCO, ESQ.
 9
10
11  UNITED STATES DEPARTMENT OF JUSTICE
12          Office of the United States Trustee
13          201 Varick Street
14          Suite 1006
15          New York, NY 10014
16
17  BY:   SUSAN D. GOLDEN, ESQ.
18
19
20  WESTERMAN BALL EDERER MILLER ZUCKER & SHARFSTEIN, LLP
21          Proposed Counsel for Official Creditors' Committee
22          1201 RXR Plaza
23          Uniondale, NY 11556
24
25  BY:   THOMAS A. DRAGHI, ESQ.
```

1

2  KARMER LEVIN NAFTALIS & FRANKEL LLP

3        Attorneys for Sutton 58 Associates LLC

4        1177 Avenue of the Americas

5        New York, NY 10036

6

7  BY:   ADAM C. ROGOFF, ESQ.

8        P. BRADLEY O'NEILL, ESQ.

9        NATAN HAMERMAN, ESQ.

10

11

12  HERRICK, FEINSTEIN LLP

13        2 Park Avenue

14        New York, NY 10016

15

16  BY:   ANDREW C. GOLD, ESQ.

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S
2            THE COURT:  All right.  The next matter on is BH
3  Sutton Mezz LLC.  And there's also a new case, Sutton 58 Owner,
4  LLC, that I believe is just on for a request for joint
5  administration.
6            Now, let me make sure -- I think we have some folks on
7  the phone, so we'll take a minute to get them dialed in.
8            MR. O'NEILL:  I'm wondering, Your Honor -- good
9  morning.  Brad O'Neill on behalf of Sutton Associates.  I
10  wonder if we could beg your indulgence for maybe ten minutes or
11  so, so we can have a conversation with the debtor outside?
12            THE COURT:  Yeah, that's --
13            MR. O'NEILL:  That might help get people together on
14  the phone.
15            THE COURT:  That's fine.  Anybody have a problem with
16  that?
17            MR. O'NEILL:  Thank you, Your Honor.
18            THE CLERK:  Sorry, Operator.  Are we still connected
19  with the parties for BH Sutton Mezz case?
20            COURTCALL OPERATOR:  You are.  He requested to be
21  listen-only.  Do you need to speak with him?
22            THE CLERK:  No, I just wanted to make sure we were
23  still connected.  Thank you.
24            THE COURT:  All right.  For the person who's on the
25  phone listen-only, the parties are going to take advantage of

1   the bankruptcy court hallway, as is often the case, to have a

2   discussion for about ten minutes.  And so the Court will

3   adjourn for a few minutes until they're ready to go and come

4   back out in about ten minutes.  Bankruptcy time it usually

5   turns into, applying a fifty percent multiplier, about fifteen

6   minutes.  Thank you.

7         (Recess from 11:20 a.m. until 11:48 a.m.)

8              THE CLERK:  All rise.

9              THE COURT:  Please be seated.  All right.  So I

10  believe we still have the party on the telephone who is in

11  listen-only, and so I don't think we've gotten to entering

12  appearances, so let's do that now.

13             MR. MANISCALCO:  Good morning, Your Honor.  Joseph

14  Maniscalco, LaMonica Herbst & Maniscalco, on behalf of the BH

15  Sutton Mezz debtor and the new debtor that filed yesterday,

16  Sutton 58 Owner LLC.

17             THE COURT:  All right.

18             MR. DRAGHI:  Good morning, Judge.  Tom Draghi from

19  Westerman Ball Ederer Miller Zucker & Sharfstein, proposed

20  counsel for the official committee of unsecured creditors in

21  the BH Mezz LLC case.

22             THE COURT:  All right.

23             MR. ROGOFF:  Good morning, Your Honor.  Adam Rogoff of

24  Kramer Levin.  I'm here with my partner Brad O'Neill, our

25  colleague Natan Hamerman.  We are representing Sutton 58

1  Associates, which is the secured lender in each of the cases.

2  MS. GOLDEN:  Good morning, Your Honor.  Susan Golden

3  for the U.S. Trustee.

4  THE COURT:  All right.

5  MR. GOLD:  Good morning, Your Honor.  Andrew Gold,

6  Herrick, Feinstein, pro se.

7  THE COURT:  All right.  So we have a number of things

8  on for today, so let me hear where things stand, and then I

9  guess we'll have argument on the pending motion.

10  MR. MANISCALCO:  So from a perspective of the status

11  of the case, Your Honor, yesterday we had filed the fee

12  owner -- Sutton 58 Owner LLC, and the Mezz debtor has a status

13  conference with this Court on April 14th.  The Mezz debtor

14  appeared at its IBI meeting with the Office of the United

15  States Trustee.  There's been a committee appointed in that

16  case.

17  The fee owner just filed yesterday, so nothing has

18  really happened.  We filed a motion for joint administration

19  yesterday.  We contacted chambers.  Chambers told us to email

20  serve it on the parties, which we did, which is on before the

21  Court this morning.

22  THE COURT:  All right.

23  MR. MANISCALCO:  So with respect to that fee owner,

24  the first matter before the Court is this motion for joint

25  administration; and we have a pending motion to dismiss with

1  respect to the Mezz owner.

2          With respect to the motion to dismiss, we can discuss

3  it later.  I'm not sure if it moots the issue.  And if you want

4  to deal with the motion for joint administration yet?

5          THE COURT:  Well, let's deal with the dismissal in a

6  minute.  Is there -- I know there was an extension of time to

7  file schedules.  What's the status of that?

8          MR. MANISCALCO:  So the Mezz filed its schedules last

9  night.  So the Mezz had till today to file its schedules, so

10  all those schedules have been filed.  The fee owner filed a

11  bare-bones petition yesterday.  Those schedules should be filed

12  within fourteen days.  I don't anticipate any extension.

13          There's a substantial overlap in the creditors between

14  the fee owner and the Mezz, and I think the initial position in

15  the case from the lender's perspective was that the creditors

16  did not sit on the Mezz side.  Aside from the fact that we

17  disagreed with that position from its inception, I think that

18  becomes moot at this point, because there's a unity between the

19  Mezz and the fee owner.  This is one real estate development

20  project on East 58th Street.

21          THE COURT:  All right.

22          MR. MANISCALCO:  So --

23          THE COURT:  All right, so anything else before we turn

24  to the motion?

25          MR. MANISCALCO:  The administration motion --

1          THE COURT:  Well, let me -- let's do that one after.

2          MR. MANISCALCO:  Got it.

3          THE COURT:  Let's do the motion to dismiss first.

4     I'll hear from the movant on the other side.

5          MR. MANISCALCO:  Okay.

6          THE COURT:  I will tell everyone that I've read

7     everything that was filed.  And so people don't need to repeat

8     everything that's in their papers.  Suffice it to say, this is

9     a motion to dismiss for a bunch of different bases.  There's

10    also a motion to lift the stay.  Obviously one case -- well,

11    this case that's the subject of the motion is fairly recently

12    filed, which is obviously somewhat relevant.  And so with all

13    that said, proceed.

14         MR. ROGOFF:  Good morning, Your Honor.  Adam Rogoff,

15    Kramer Levin, on behalf of Sutton 58 Associates.  With Your

16    Honor's permission, I'd like just to give a little bit of an

17    overview which is, in part, an introduction on the motion to

18    dismiss, but it's also, I think, to address some of the issues

19    relating to the sort of preliminary status of where we are

20    today with both the motion to dismiss and the Sutton Owner case

21    that was filed --

22         THE COURT:  Well --

23         MR. ROGOFF:  -- because I think there's some

24    significant concerns and overlapping --

25         THE COURT:  Well, let me make an initial observation,

1  which is, there are often times people want to get their story
2  out in court and get their -- fire their warning shot across
3  the bow, announce their presence with authority, whatever
4  metaphor you'd like to use, depending on your selection of
5  movies that you like.  And this motion strikes me as somewhat
6  of that, which is you're getting your view of the case out.

7          And that's all fine.  And you obviously have whatever
8  rights you have.  But my initial impression is, you're asking
9  for relief based on -- that could only be given if I adopt your
10  view of the case.  And so you say it's a two-party dispute and
11  you say there are no creditors, and there's an official
12  committee of unsecured creditors.

13          MR. ROGOFF:  Well --

14          THE COURT:  Obviously, I understand you don't agree
15  with that, but obviously there is such a committee.  So you
16  recognize that in order for me to adopt your characterization
17  of the case as a two-party dispute with no other creditors, I
18  have to disregard the very existence and the appointment of the
19  committee of unsecured creditors, and that's asking a lot at
20  this early stage of the case.

21          And there are other things like that, that I couldn't
22  help but notice in looking at the motion.  So there were things
23  talking about a recent appraisal.  I believe it was 181
24  million.  And so --

25          MR. ROGOFF:  So -- yes --

 1          THE COURT:  -- the other side is, where's the fire?
 2     So you filed the motion really early.  And so in doing so, you
 3     bring these kind of questions upon yourself.  And so to the
 4     extent that you want me to be aware of your position in the
 5     case and issues to come, okay, I get it.  But to the extent
 6     you're asking for relief and you want the case dismissed today,
 7     that obviously is a horse of a different color.

 8          And I once had somebody object to joint administration
 9     in a case because they needed to make a speech about how the
10     case was going to unfold and who should be in the case and who
11     shouldn't be in the case.  They knew they were going to lose
12     the motion, but they needed to make a speech; they made a
13     speech, and there we were.

14          So I just point it out because as a motion seeking
15     relief, there are lots of problems.

16          MR. ROGOFF:  All right.  If I may, Your Honor, I
17     think -- I appreciate the points, some of which, frankly, we've
18     had discussions with Ms. Golden of the U.S. Trustee's Office
19     concerning, and I'll address in a moment, and of course hope
20     that she will as well.

21          Let me just state up front, this was not a motion to
22     sort of announce a presence.  This wasn't to sort of get before
23     you first on what our view of the case is.  And I know Your
24     Honor pointed out and Mr. Maniscalco sort of criticized the
25     fact that a motion to dismiss the case was filed at the early

1   stages of the case.  I would point out, that is when a motion
2   to dismiss when you believe a bankruptcy case is improperly
3   commenced, should be filed so that we don't allow things to
4   move by their own weight and then --

5          THE COURT:  This may be the fastest motion I've seen
6   in a large 11.

7          MR. ROGOFF:  Well, it's --

8          THE COURT:  So there's early stages, and there's --
9   what is it, a week, two weeks.  So --

10          MR. ROGOFF:  Two weeks based -- certainly based at the
11   moment.  And one of the things that we wanted to say this
12   morning is that we wanted to have an opportunity to actually
13   assess what to do with the motion to dismiss in light of the
14   Sutton Owner filing now, because we believe and do believe that
15   the motion to dismiss, insofar as the Sutton Mezz is concerned,
16   is actually, insofar as the Sutton Mezz is concerned, is a
17   proper and appropriate motion.  And I hear Your Honor's
18   concerns, and we think we could address that in connection with
19   a definitive hearing on that.

20          And it still may be something that we believe we
21   should have the opportunity to present before Your Honor,
22   especially because, if anything, the schedules that the debtor
23   filed last night, taking six weeks to file, just confirm --

24          THE COURT:  Well, they asked for additional time.
25   That's not uncommon.  I know there was a fight about it.  But

1    ultimately, I was granting it in piecemeal stages, but -- to

2    tie in with the motion to dismiss; but then the motion to

3    dismiss hearing was on before it was permissible under the

4    rules.  So at a certain point, that becoming a mess, I just

5    granted the requested.  So --

6              MR. ROGOFF:  I'm --

7              THE COURT:  -- it is what it is.  Are you saying that

8    you want to adjourn your motion to another date to assess the

9    filing of the other case?

10             MR. ROGOFF:  Yes.

11             THE COURT:  All right.

12             MR. ROGOFF:  We are -- that was one --

13             THE COURT:  Request granted.

14             MR. ROGOFF:  Okay.

15             THE COURT:  So --

16             MR. ROGOFF:  So then if I can, Your Honor, let me get

17   to responding to, I think, some of the salient points

18   concerning the Sutton Owner, and frankly is something that we

19   may need to file a motion on; and I'd like to avoid unnecessary

20   motion practice.  That is not our goal here.

21             THE COURT:  Well --

22             MR. ROGOFF:  We had noticed --

23             THE COURT:  -- all I can say is, that this is filed in

24   the initial -- in the reply papers that I got yesterday.  So

25   again, everybody has a right to do what they have a right to do

1    under the Code.  And I don't have any illusions that I know the

2    case as well as the parties do, but I think it's wise to

3    adjourn the case so you can see the schedules, you can see the

4    information, you can assess the owner, and there are -- I

5    identified those two concerns as things that stand out to me as

6    the elephants in the room on this kind of a request.  So I'm

7    sure there's other things to address.  But that's fine.

8         So in light of adjourning the motion, what is it that

9    you wanted to get into?  The reason why I ask is, adjourning

10   the motion means we shouldn't backslide into it and then --

11        MR. ROGOFF:  This is not concerning that motion, Your

12   Honor.

13        THE COURT:  All right.

14        MR. ROGOFF:  This is -- and this is concerning,

15   frankly, the part of today's calendar that is a status

16   conference on the Sutton Owner case, of which, again, our

17   client is the largest creditor.  And it's reflective of one of

18   the reasons why we've moved promptly, it's because they are the

19   largest stakeholder -- the largest affected party by a wide

20   magnitude, of what's happening in this Chapter 11 case.

21        And the salient point for now is that we had noticed

22   and anticipated, and I'd inquired both of Mr. Maniscalco last

23   night and again this morning, that the petition for the Sutton

24   Owner was not denoted as a single-asset real estate case.

25   Everything that we're aware of, which is consistent with, in

1    fact, the organizational documents of the Sutton Owner entity,

2    is that this all concerns a development, a property, a project,

3    I think is the defined term, that the debtors -- both debtors

4    repeatedly use.  And we were just informed moments before the

5    case status conference started this morning, that apparently

6    that is not inadvertent, and they are taking the position that

7    there is some un -- as yet were told -- pieces of property out

8    there that are not adjacent or connected with this project,

9    that somehow remove this substantial project -- which is what

10   all of the sort of positioning before the Court has been by the

11   debtor to date, and that because there may be one or two other

12   pieces of property out there, that this is not a single-asset

13   real estate case.

14        Obviously that becomes important, because not only

15   does it set the tone of what should happen in the case, but

16   more importantly, it establishes what the rights of our client

17   as a secured creditor would be.

18        So I think, unfortunately, since there seems to be a

19   disagreement on this, we are going to have to file a motion for

20   a determination --

21        THE COURT:  Well, don't you need to get their

22   information on the filing before you -- I mean --

23        MR. ROGOFF:  We would love to get their information.

24        THE COURT:  Yeah, so let's slow down a second.  So I

25   know your client is -- it sounds like it's filing a motion no

1  matter what the information says, which seems to me, frankly, a
2  rather problematic position.

3        So there are disclosure requirements.  People are
4  required to meet them.  I'm told they won't need an extension
5  to meet them.  It seems to me a real problem if you file
6  something before you get that information.

7        If you're saying well, we know we have this big
8  property and it's a project, it sounds like you don't know
9  about any other property.  You don't think there is any, well,
10  let's find out what they say first.  I understand the
11  significance of single-asset real estate versus nonsingle-asset
12  real estate.  I know it affects your rights.  But slow down.

13        MR. ROGOFF:  Your Honor, I --

14        THE COURT:  The reason why it's important to slow down
15  is we can waste an awful lot of time, everyone's time.  I read
16  all the papers I get.  I waded through Exhibits KK through FF,
17  which actually I'm not even sure -- I'm sorry, it's FFF, in
18  addition to things that had been filed earlier to get ready for
19  a hearing in a motion that, frankly, seemed to me pretty easy
20  to characterize as premature.

21        I don't want another premature motion.  You may be
22  right, as I said to the person who objected to joint
23  administration.  I overruled the objection to joint
24  administration.  It turned out the point he made was correct,
25  and there was a time to deal with it, and it got dealt with and

1    it turned out he was correct.  So that's fine.  But there's

2    times and places to deal with these things.  So let's find out

3    what they say and assess where things are, and then we can have

4    orderly motion practice.

5           Given the fact that there was a representation in the

6    opposition and nothing that challenged that representation that

7    your client is -- that there's more equity in the property than

8    you are owed, it's not that kind of case, so we can do this

9    with the luxury of making sure we have all the information in

10   front of us.

11          MR. ROGOFF:  If I may, Your Honor?  I appreciate that.

12   And we are not, by any means, looking to file a motion either

13   simply for the sake of filing it or filing it prematurely.  We

14   actually believe and we hope that the information as to what

15   these other properties are should not take a full fourteen days

16   to respond to.  I understand --

17          THE COURT:  Are you saying they don't get the fourteen

18   days under the Code?

19          MR. ROGOFF:  I'm asking for a hopefully quick

20   turnaround just to identify what these other pieces of property

21   are.

22          THE COURT:  If you're objecting to the fourteen days

23   under the Code --

24          MR. ROGOFF:  I --

25          THE COURT:  -- I overrule the objection.

1           MR. ROGOFF:  I'm not.  I'm not, Your Honor.

2           THE COURT:  All right.  So if you file a motion before

3    the information is out there, I'm going to deny it without

4    prejudice to reassert.  Because it frankly will be premature,

5    and you'll be arguing about things -- you say you're interested

6    to know what these properties are.  And I assume without that

7    knowledge, you actually can't form a basis for making a motion

8    that satisfies Rule 11.  I don't know how you could.

9           Now, again, if your client has perfect information

10   about everything that that entity has, great, then file your

11   motion.  But if you don't, I really don't see how you have a

12   basis to file it.  And so they get fourteen days.  I tried to

13   walk some sort of a line when there was an original request for

14   additional time.  Things got bollixed up because of the way the

15   motion was filed on an improper hearing date.  There's no

16   request for additional time here.  And I'm giving them the

17   fourteen days.

18          If you were on the other side of this as debtor's

19   counsel, you would have -- you know the speech you would give.

20          MR. ROGOFF:  Appreciate that, Your Honor.  And

21   speaking for myself, if I were on the other side as debtor's

22   counsel, I would send a simple letter answering a question as

23   to where the other property is, without requiring people to

24   wait.

25          Let me just state, since is it for purposes of where

1   we are, we don't agree -- because Your Honor made a statement

2   that perhaps we somehow believe that we're over-collateralized

3   and therefore there is time and there's no harm -- we don't

4   agree with position.  We'll deal with it when the time is ripe.

5   And --

6          THE COURT:  But I didn't see anything in the reply

7   that challenged that characterization.

8          MR. ROGOFF:  We didn't believe that that was necessary

9   to challenge in the reply, because the reply -- the issues,

10  Your Honor, before the Court --

11         THE COURT:  So you realize what you're telling me?

12  This is -- this is a real mixed message.  So you're telling me

13  you have enough information to wade in on dismissal of cases

14  this early, but you, despite throwing pretty much everything I

15  think you can think of in the record here, you didn't think it

16  was something that you would address.  I mean, obviously, it's

17  relevant, right, in terms of the speed at which -- addressing

18  this issue for me.  Right?

19         Obviously, if you are not adequately protected, then

20  that's in the Code as a basis for dismissal.  So --

21         MR. ROGOFF:  Well, and we do -- and we do state that,

22  that we don't believe that they can adequately protect us, Your

23  Honor.  And insofar as the motion before the Court today was

24  concerned, we did address that saying as to whether there a

25  reasonable prospect for a reorganization on three uninhabitable

1  buildings, today, and an expectation and a dream of a

2  development down the road.

3          THE COURT:  No, I got that.

4          MR. ROGOFF:  Right.

5          THE COURT:  Again, I'm not -- there's a narrative

6  about what's going on underlying the project and who did what

7  to whom and how it should be characterized.  And I'm not making

8  a comment on that today.  I don't have any ability to buy in on

9  your narrative, but I don't have any ability to buy in on their

10  narrative.  I don't know.

11          And so but that's my concern about things being

12  premature.  Let's get the information that we all need to get,

13  and then we'll figure it out.

14          MR. ROGOFF:  The last thing I just want to note for

15  Your Honor in the spirit of candor is that they have told us

16  they're planning on filing some sort of a DIP motion.  We

17  understand that they're going to try to file a priming DIP

18  motion.  Obviously we would object to that when the time comes.

19  We'll raise these other issues.

20          We did make a proposal that we would be willing to go

21  back to our client and see if we could work out some sort of

22  consensual funding process with the expectation and condition

23  that there be an independent that is brought in to oversee the

24  process, whether it's a CRO or some other type of independent

25  fiduciary that's brought in.

1        And part of the reasoning for that proposal, Your

2   Honor, is to keep this from devolving into sort of spinning

3   positions and try to move things forward.  So I understand that

4   proposal was not acceptable.  We'll either reiterate it in the

5   context of when they do file a funding as a part of our

6   objection, or we'll make a motion before Your Honor for some

7   sort of independent fiduciary to be brought in.

8        But what we are trying to do is actually focus the

9   issues, put aside all the noise about the alleged claims of

10  misconduct, which we vehemently deny, but rather just focus on

11  what's happening with the property and the most effective way

12  to deal with these cases, especially given the fact that, at

13  the end of the day, the unsecured creditor pool is extremely

14  small, both in terms of number of parties and dollar amounts,

15  in relation to the client's -- the secured lender's claims.

16       THE COURT:  All right.  Anybody else wish to be heard?

17       MS. GOLDEN:  Yes, Your Honor.  Susan Golden for the

18  U.S. Trustee.  Just to weigh in very briefly on the committee

19  issue which Mr. Rogoff alluded to.

20       After we solicited and got the three responses, the

21  U.S. Trustee obviously formed the committee.  The secured

22  lender reached out to us both by phone and also in writing

23  questioning the claims that the creditors that were listed on

24  the debtors' petition had against the debtor.

25       We reached out to Mr. Maniscalco as well, received a

1  response.  The secured lender replied.  Those letters are

2  sitting with the U.S. Trustee to make his determination

3  independently.  I mentioned it to committee counsel and also

4  reached out to the individual creditors to see what they had to

5  say about that.  I haven't heard from the individual creditors

6  yet.

7        So that is what the U.S. Trustee -- obviously now

8  there's an intervening case with the asset holder.  And so

9  we'll see -- I'll speak to the U.S. Trustee this afternoon.

10 He's in Manhattan today.  I would like to tell debtors' counsel

11 that even though the creditors, I think, are substantially

12 similar, we do solicit even when a second case files after the

13 first one.  So those -- I've signed off on it, so I imagine

14 that those will go out, if not in the mail yet, they will

15 probably go out this evening.

16       So I just wanted to let everyone know, including the

17 Court know, where that status is.  So just by saying that,

18 well, the U.S. Trustee formed a committee, that's true, but at

19 the time we formed the committee, we had no basis at all, and

20 we still don't know -- we had no basis at all to think that

21 there would be an issue and someone would raise an issue about

22 the validity of the claims against this particular debtor.

23       THE COURT:  Yeah -- no, that --

24       MS. GOLDEN:  So that's where it is.

25       THE COURT:  -- that's fine.  I think it goes to the

1    lack of information.  And again, I don't have enough
2    information to make that determination.  I'm not surprised that
3    your office is the subject of a lot of people requesting your
4    attention on that issue and that there's lots of people who
5    shared their viewpoints.  And I'm also not surprised that given
6    the circumstances, you haven't had a chance to reach your own
7    conclusion yet.
8         I think my take only is that I don't know.  I really
9    don't know.  And we'll get there.
10        MS. GOLDEN:  Okay.
11        THE COURT:  But there's some pretty good quotes in
12   cases dealing with requests to dismiss about what a draconian
13   sanction it is, and that you're really not supposed to trot it
14   out unless it's appropriate.  So that's my concern.
15        So all right.  I would think, at some point, we'll
16   have a discussion about what the end game is and what the
17   debtors -- where the debtors see this case going.  Is this the
18   kind of a case that's going to result in a sale to capture the
19   upside of a potential project, or it's actually to develop
20   things?  I don't know.  I don't know if you know.
21        But I obviously did have a very contentious case
22   recently about a particular piece of property in Manhattan
23   involving many, many parties who all had various claims against
24   each other and they were all trying to capture the upside of
25   the project.  Ultimately it went to a sale, and the parties

1   agreed upon an appropriate waterfall in light of all the claims

2   they had against one another.  The case still refuses to

3   completely die, given the bitter feelings that was in the

4   courtroom in that case.  I think it involved probably three

5   times the amount of lawyers who are here today.

6           The only reason I mention it is because an enormous

7   amount of time was spent litigating all sorts of things:

8   injunctions, contempt.  It was really just the playbook of

9   everything every judge hopes to have in a single-asset real

10  estate case.

11          So I, again, am agnostic about the merits of anybody's

12  particular position.  I don't know yet.  The papers did a very

13  good job on both sides of writing their narrative as to what's

14  going on.  I'm not in the position to adopt any of those.

15          I mention it to the extent that one of my regrets in

16  that case is that it took as long and was as expensive to

17  litigate as it was.  I don't know if there was ever any other

18  alternative, but to the extent that the parties here think that

19  sort of an early intervention in mediation or some other

20  process to get a third-party neutral to weigh in would be

21  helpful and cost-effective, now is as good a time as any to

22  throw that out, because time is money, and there's obviously a

23  lot of people here today, and I expect this case will be

24  particularly popular in terms of the number of lawyers who need

25  to come.  There's enough money at stake.  So I pass that on for

1  what it's worth.

2          So with that, I think we can address the request for

3  joint administration.

4          MR. MANISCALCO:  Thank you, Your Honor.  The motion

5  for joint administration was filed last night.  As the motion

6  lays out, there's a substantial overlap.  I think for judicial

7  economy, for administrative purposes, it is in the best

8  interests of both of these debtors to jointly administer them.

9  It would keep the costs down.  It's been served.  It's a fairly

10 simple motion.  I didn't receive any objections.

11         I had conversations with counsel in the hallway and

12 they didn't object to that.  So if there are no objections, I'd

13 request that the Court enter that order.

14         THE COURT:  All right.  Anybody wish to be heard on

15 this particular motion?

16         All right.  It does seem to be a sensible thing to do,

17 given the narratives that are in the papers about how all this

18 unfolded in the organization of the project.  So I'll grant the

19 motion for joint administration, obviously, which is, as you

20 all know, not a substantive consolidation in any way, shape, or

21 form.

22         So I think the last thing, then, that I don't want to

23 forget to mention is, I don't know if you want to set some sort

24 of schedule or rough framework for how to deal with this motion

25 in terms of the case going forward.  Timing-wise, if you want

1  to talk to one another first, if you want to wait to see what
2  information you get first, I'm open to suggestions.  If you
3  want to set something as a control date, with the understanding
4  that it may change?  So any thoughts on it, Mr. Rogoff?
5          MR. O'NEILL:  Why don't I -- Your Honor, Brad O'Neill.
6  Why don't I suggest, we're back here next week anyway for a
7  case conference.  Why don't we defer that issue until next
8  week.  We can --
9          THE COURT:  That's fine.
10         MR. O'NEILL:  -- confer internally, we can confer with
11  counsel, and we'll hopefully be in a position to propose
12  something to you.
13         THE COURT:  All right.  That's perfectly sensible.
14  And so I'll expect to get some sort of proposal or certainly
15  your take on how to address that going forward next week.  And
16  hopefully we can work out a schedule even if people vigorously
17  disagree on the merits of the issues.
18         So with all that said, anything else that we need to
19  address here today?
20         MR. MANISCALCO:  That's it, Your Honor.  I think my
21  firm's retention was on for today, but there's some additional
22  disclosures the Trustee's Office wants me to make, so if we
23  could push that to next Thursday, if that works?
24         THE COURT:  All right, next Thursday it is.  Anything
25  else?

1          MR. ROGOFF:  No, Your Honor.

2          THE COURT:  All right.  See you all next week.  Thank

3   you.

4          IN UNISON:  Thank you.

5       (Whereupon these proceedings were concluded at 12:16 PM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                            **I N D E X**

3

4                              RULINGS

5                                              PAGE      LINE

6  Oral request to adjourn motion to dismiss is 13        13

7  granted.

8  Motion for joint administration is granted.  25        18

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4   I, Penina Wolicki, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8

9

10  _____

11

12  PENINA WOLICKI

    AAERT Certified Electronic Transcriber CET**D-569

13

14

15  eScribers

    700 West 192nd Street, Suite #607

16

    New York, NY 10040

17

18

    Date:  July 12, 2016

19

20

21

22

23

24

25

## A

**ability (2)**
20:8,9
**acceptable (1)**
21:4
**across (1)**
10:2
**actually (7)**
12:12,16;16:17;
17:14;18:7;21:8;
23:19
**ADAM (3)**
4:7;6:23;9:14
**addition (1)**
16:18
**additional (4)**
12:24;18:14,16;
26:21
**address (9)**
9:18;11:19;12:18;
14:7;19:16,24;25:2;
26:15,19
**addressing (1)**
19:17
**adequately (2)**
19:19,22
**adjacent (1)**
15:8
**adjourn (3)**
6:3;13:8;14:3
**adjourning (2)**
14:8,9
**administer (1)**
25:8
**administration (11)**
5:5;7:18,25;8:4,
25;11:8;16:23,24;
25:3,5,19
**administrative (1)**
25:7
**adopt (3)**
10:9,16;24:14
**advantage (1)**
5:25
**affected (1)**
14:19
**affects (1)**
16:12
**afternoon (1)**
22:9
**again (7)**
13:25;14:16,23;
18:9;20:5;23:1;
24:11
**against (4)**
21:24;22:22;
23:23;24:2
**agnostic (1)**
24:11
**agree (3)**
10:14;19:1,4

**agreed (1)**
24:1
**alleged (1)**
21:9
**allow (1)**
12:3
**alluded (1)**
21:19
**alternative (1)**
24:18
**Americas (1)**
4:4
**amount (2)**
24:5,7
**amounts (1)**
21:14
**ANDREW (2)**
4:16;7:5
**announce (2)**
10:3;11:22
**anticipate (1)**
8:12
**anticipated (1)**
14:22
**apparently (1)**
15:5
**appearances (1)**
6:12
**appeared (1)**
7:14
**applying (1)**
6:5
**appointed (1)**
7:15
**appointment (1)**
10:18
**appraisal (1)**
10:23
**appreciate (3)**
11:17;17:11;18:20
**appropriate (3)**
12:17;23:14;24:1
**April (1)**
7:13
**arguing (1)**
18:5
**argument (1)**
7:9
**Aside (2)**
8:16;21:9
**assess (4)**
12:13;13:8;14:4;
17:3
**asset (1)**
22:8
**Associates (4)**
4:3;5:9;7:1;9:15
**assume (1)**
18:6
**attention (1)**
23:4
**Attorneys (1)**
4:3

**authority (1)**
10:3
**Avenue (2)**
4:4,13
**avoid (1)**
13:19
**aware (2)**
11:4;14:25
**awful (1)**
16:15

## B

**back (3)**
6:4;20:21;26:6
**backslide (1)**
14:10
**Ball (1)**
6:19
**bankruptcy (3)**
6:1,4;12:2
**bare-bones (1)**
8:11
**based (3)**
10:9;12:10,10
**bases (1)**
9:9
**basis (5)**
18:7,12;19:20;
22:19,20
**becomes (2)**
8:18;15:14
**becoming (1)**
13:4
**beg (1)**
5:10
**behalf (3)**
5:9;6:14;9:15
**best (1)**
25:7
**BH (4)**
5:2,19;6:14,21
**big (1)**
16:7
**bit (1)**
9:16
**bitter (1)**
24:3
**bollixed (1)**
18:14
**both (7)**
9:20;14:22;15:3;
21:14,22;24:13;25:8
**bow (1)**
10:3
**Brad (3)**
5:9;6:24;26:5
**BRADLEY (1)**
4:8
**briefly (1)**
21:18
**bring (1)**
11:3

**brought (3)**
20:23,25;21:7
**buildings (1)**
20:1
**bunch (1)**
9:9
**buy (2)**
20:8,9

## C

**calendar (1)**
14:15
**can (16)**
5:11;8:2;13:16,23;
14:3,3,4;16:15;17:3,
8;19:15,22;25:2;
26:8,10,16
**candor (1)**
20:15
**capture (2)**
23:18,24
**case (46)**
5:3;19:6:1,21;
7:11,16;8:15;9:10,
11,20;10:6,10,17,20;
11:5,6,9,10,10,11,23,
25;12:1,2;13:9;14:2,
3,16,20,24;15:5,13,
15;17:8;22:8,12;
23:17,18,21;24:2,4,
10,16,23;25:25;26:7
**cases (4)**
7:1;19:13;21:12;
23:12
**certain (1)**
13:4
**certainly (2)**
12:10;26:14
**challenge (1)**
19:9
**challenged (2)**
17:6;19:7
**Chambers (2)**
7:19,19
**chance (1)**
23:6
**change (1)**
26:4
**Chapter (1)**
14:20
**characterization (2)**
10:16;19:7
**characterize (1)**
16:20
**characterized (1)**
20:7
**circumstances (1)**
23:6
**claims (6)**
21:9,15,23;22:22;
23:23;24:1
**CLERK (3)**

**5:18,22;6:8**
**client (6)**
14:17;15:16,25;
17:7;18:9;20:21
**client's (1)**
21:15
**Code (4)**
14:1;17:18,23;
19:20
**colleague (1)**
6:25
**color (1)**
11:7
**commenced (1)**
12:3
**comment (1)**
20:8
**committee (10)**
6:20;7:15;10:12,
15,19;21:18,21;22:3,
18,19
**completely (1)**
24:3
**concern (2)**
20:11;23:14
**concerned (2)**
12:15,16;19:24
**concerning (4)**
11:19;13:18;
14:11,14
**concerns (4)**
9:24;12:18;14:5;
15:2
**concluded (1)**
27:5
**conclusion (1)**
23:7
**condition (1)**
20:22
**confer (2)**
26:10,10
**conference (4)**
7:13;14:16;15:5;
26:7
**confirm (1)**
12:23
**connected (3)**
5:18,23;15:8
**connection (1)**
12:18
**consensual (1)**
20:22
**consistent (1)**
14:25
**consolidation (1)**
25:20
**contacted (1)**
7:19
**contempt (1)**
24:8
**contentious (1)**
23:21
**context (1)**

21:5
**control (1)**
    26:3
**conversation (1)**
    5:11
**conversations (1)**
    25:11
**cost-effective (1)**
    24:21
**costs (1)**
    25:9
**counsel (7)**
    6:20;18:19,22;
    22:3,10;25:11;26:11
**course (1)**
    11:19
**COURT (61)**
    5:2,12,15,24;6:1,2,
    9,17,22;7:4,7,13,21,
    22,24;8:5,21,23;9:1,
    3,6,22,25;10:2,14;
    11:1;12:5,8,24;13:7,
    11,13,15,21,23;
    14:13;15:10,21,24;
    16:14;17:17,22,25;
    18:2;19:6,10,11,23;
    20:3,5;21:16;22:17,
    23,25;23:11;25:13,
    14;26:9,13,24;27:2
**COURTCALL (1)**
    5:20
**courtroom (1)**
    24:4
**creditor (3)**
    14:17;15:17;21:13
**creditors (11)**
    6:20;8:13,15;
    10:11,12,17,19;
    21:23;22:4,5,11
**criticized (1)**
    11:24
**CRO (1)**
    20:24

**D**

**date (4)**
    13:8;15:11;18:15;
    26:3
**day (1)**
    21:13
**days (6)**
    8:12;17:15,18,22;
    18:12,17
**deal (7)**
    8:4,5;16:25;17:2;
    19:4;21:12;25:24
**dealing (1)**
    23:12
**dealt (1)**
    16:25
**debtor (9)**
    5:11;6:15,15;7:12,

13;12:22;15:11;
    21:24;22:22
**debtors (5)**
    15:3,3;23:17,17;
    25:8
**debtors' (2)**
    21:24;22:10
**debtor's (2)**
    18:18,21
**defer (1)**
    26:7
**defined (1)**
    15:3
**definitive (1)**
    12:19
**denoted (1)**
    14:24
**deny (2)**
    18:3;21:10
**depending (1)**
    10:4
**despite (1)**
    19:14
**determination (3)**
    15:20;22:2;23:2
**develop (1)**
    23:19
**development (3)**
    8:19;15:2;20:2
**devolving (1)**
    21:2
**dialed (1)**
    5:7
**die (1)**
    24:3
**different (2)**
    9:9;11:7
**DIP (2)**
    20:16,17
**disagree (1)**
    26:17
**disagreed (1)**
    8:17
**disagreement (1)**
    15:19
**disclosure (1)**
    16:3
**disclosures (1)**
    26:22
**discuss (1)**
    8:2
**discussion (2)**
    6:2;23:16
**discussions (1)**
    11:18
**dismiss (13)**
    7:25;8:2;9:3,9,18,
    20;11:25;12:2,13,15;
    13:2,3;23:12
**dismissal (3)**
    8:5;19:13,20
**dismissed (1)**
    11:6

**dispute (2)**
    10:10,17
**disregard (1)**
    10:18
**documents (1)**
    15:1
**dollar (1)**
    21:14
**down (5)**
    15:24;16:12,14;
    20:2;25:9
**draconian (1)**
    23:12
**DRAGHI (2)**
    6:18,18
**dream (1)**
    20:1

**E**

**earlier (1)**
    16:18
**early (6)**
    10:20;11:2,25;
    12:8;19:14;24:19
**East (1)**
    8:20
**easy (1)**
    16:19
**economy (1)**
    25:7
**Ederer (1)**
    6:19
**effective (1)**
    21:11
**either (2)**
    17:12;21:4
**elephants (1)**
    14:6
**else (4)**
    8:23;21:16;26:18,
    25
**email (1)**
    7:19
**end (2)**
    21:13;23:16
**enormous (1)**
    24:6
**enough (3)**
    19:13;23:1;24:25
**enter (1)**
    25:13
**entering (1)**
    6:11
**entity (2)**
    15:1;18:10
**equity (1)**
    17:7
**especially (2)**
    12:22;21:12
**ESQ (4)**
    4:7,8,9,16
**establishes (1)**

15:16
**estate (6)**
    8:19;14:24;15:13;
    16:11,12;24:10
**even (4)**
    16:17;22:11,12;
    26:16
**evening (1)**
    22:15
**everybody (1)**
    13:25
**everyone (2)**
    9:6;22:16
**everyone's (1)**
    16:15
**Exhibits (1)**
    16:16
**existence (1)**
    10:18
**expect (2)**
    24:23;26:14
**expectation (2)**
    20:1,22
**expensive (1)**
    24:16
**extension (3)**
    8:6,12;16:4
**extent (1)**
    11:4,5;24:15,18
**extremely (1)**
    21:13

**F**

**fact (5)**
    8:16;11:25;15:1;
    17:5;21:12
**fairly (2)**
    9:11;25:9
**fastest (1)**
    12:5
**fee (6)**
    7:11,17,23;8:10,
    14,19
**feelings (1)**
    24:3
**FEINSTEIN (2)**
    4:12;7:6
**few (1)**
    6:3
**FF (1)**
    16:16
**FFF (1)**
    16:17
**fiduciary (2)**
    20:25;21:7
**fifteen (1)**
    6:5
**fifty (1)**
    6:5
**fight (1)**
    12:25
**figure (1)**

20:13
**file (12)**
    8:7,9;12:23;13:19;
    15:19;16:5;17:12;
    18:2,10,12;20:17;
    21:5
**filed (19)**
    6:15;7:11,17,18;
    8:8,10,10,11;9:7,12,
    21;11:2,25;12:3,23;
    13:23;16:18;18:15;
    25:5
**files (1)**
    22:12
**filing (7)**
    12:14;13:9;15:22,
    25;17:13,13;20:16
**find (2)**
    16:10;17:2
**fine (6)**
    5:15;10:7;14:7;
    17:1;22:25;26:9
**fire (2)**
    10:2;11:1
**firm's (1)**
    26:21
**first (7)**
    7:24;9:3;11:23;
    16:10;22:13;26:1,2
**focus (2)**
    21:8,10
**folks (1)**
    5:6
**forget (1)**
    25:23
**form (2)**
    18:7;25:21
**formed (3)**
    21:21;22:18,19
**forward (3)**
    21:3;25:25;26:15
**fourteen (6)**
    8:12;17:15,17,22;
    18:12,17
**framework (1)**
    25:24
**FRANKEL (1)**
    4:2
**frankly (6)**
    11:17;13:18;
    14:15;16:1,19;18:4
**front (2)**
    11:21;17:10
**full (1)**
    17:15
**funding (2)**
    20:22;21:5

**G**

**game (1)**
    23:16
**given (6)**

10:9;17:5;21:12;
23:5;24:3;25:17
**giving (1)**
18:16
**goal (1)**
13:20
**goes (1)**
22:25
**GOLD (3)**
4:16;7:5,5
**Golden (7)**
7:2,2;11:18;21:17,
17;22:24;23:10
**good (10)**
5:8;6:13,18,23;
7:2,5;9:14;23:11;
24:13,21
**grant (1)**
25:18
**granted (2)**
13:5,13
**granting (1)**
13:1
**great (1)**
18:10
**guess (1)**
7:9

**H**

**hallway (2)**
6:1;25:11
**HAMERMAN (2)**
4:9;6:25
**happen (1)**
15:15
**happened (1)**
7:18
**happening (2)**
14:20;21:11
**harm (1)**
19:3
**hear (3)**
7:8;9:4;12:17
**heard (3)**
21:16;22:5;25:14
**hearing (4)**
12:19;13:3;16:19;
18:15
**help (2)**
5:13;10:22
**helpful (1)**
24:21
**Herbst (1)**
6:14
**HERRICK (2)**
4:12;7:6
**holder (1)**
22:8
**Honor (28)**
5:8,17;6:13,23;
7:2,5,11;9:14;11:16,
24;12:21;13:16;

10:9;17:5;21:12;
14:12;16:13;17:11;
18:1,20;19:1,10,23;
20:15;21:2,6,17;
25:4;26:5,20;27:1
**Honor's (2)**
9:16;12:17
**hope (2)**
11:19;17:14
**hopefully (3)**
17:19;26:11,16
**hopes (1)**
24:9
**horse (1)**
11:7

**I**

**IBI (1)**
7:14
**identified (1)**
14:5
**identify (1)**
17:20
**illusions (1)**
14:1
**imagine (1)**
22:13
**important (2)**
15:14;16:14
**importantly (1)**
15:16
**impression (1)**
10:8
**improper (1)**
18:15
**improperly (1)**
12:2
**inadvertent (1)**
15:6
**inception (1)**
8:17
**including (1)**
22:16
**independent (3)**
20:23,24;21:7
**independently (1)**
22:3
**individual (2)**
22:4,5
**indulgence (1)**
5:10
**information (14)**
14:4;15:22,23;
16:1,6;17:9,14;18:3,
9;19:13;20:12;23:1,
2;26:2
**informed (1)**
15:4
**initial (4)**
8:14;9:25;10:8;
13:24
**injunctions (1)**
24:8

**inquired (1)**
14:22
**insofar (1)**
12:15,16;19:23
**interested (1)**
18:5
**interests (1)**
25:8
**internally (1)**
26:10
**intervening (1)**
22:8
**intervention (1)**
24:19
**into (4)**
6:5;14:9,10;21:2
**introduction (1)**
9:17
**involved (1)**
24:4
**involving (1)**
23:23
**issue (7)**
8:3;19:18;21:19;
22:21,21;23:4;26:7
**issues (6)**
9:18;11:5;19:9;
20:19;21:9;26:17

**J**

**job (1)**
24:13
**joint (10)**
5:4;7:18,24;8:4;
11:8;16:22,23;25:3,
5,19
**jointly (1)**
25:8
**Joseph (1)**
6:13
**Judge (2)**
6:18;24:9
**judicial (1)**
25:6

**K**

**KARMER (1)**
4:2
**keep (2)**
21:2;25:9
**kind (4)**
11:3;14:6;17:8;
23:18
**KK (1)**
16:16
**knew (1)**
11:11
**knowledge (1)**
18:7
**Kramer (2)**
6:24;9:15

**L**

**lack (1)**
23:1
**LaMonica (1)**
6:14
**large (1)**
12:6
**largest (3)**
14:17,19,19
**last (6)**
8:8;12:23;14:22;
20:14;25:5,22
**later (1)**
8:3
**lawyers (2)**
24:5,24
**lays (1)**
25:6
**lender (3)**
7:1;21:22;22:1
**lender's (2)**
8:15;21:15
**letter (1)**
18:22
**letters (1)**
22:1
**LEVIN (3)**
4:2;6:24;9:15
**lift (1)**
9:10
**light (3)**
12:13;14:8;24:1
**line (1)**
18:13
**listed (1)**
21:23
**listen-only (3)**
5:21,25;6:11
**litigate (1)**
24:17
**litigating (1)**
24:7
**little (1)**
9:16
**LLC (6)**
4:3;5:3,4;6:16,21;
7:12
**LLP (2)**
4:2,12
**long (1)**
24:16
**looking (2)**
10:22;17:12
**lose (1)**
11:11
**lot (4)**
10:19;16:15;23:3;
24:23
**lots (2)**
11:15;23:4
**love (1)**

15:23
**luxury (1)**
17:9

**M**

**magnitude (1)**
14:20
**mail (1)**
22:14
**making (3)**
17:9;18:7;20:7
**Manhattan (2)**
22:10;23:22
**MANISCALCO (15)**
6:13,14,14;7:10,
23:8;8:8,22,25;9:2,5;
11:24;14:22;21:25;
25:4;26:20
**many (2)**
23:23,23
**matter (3)**
5:2;7:24;16:1
**may (8)**
11:16;12:5,20;
13:19;15:11;16:21;
17:11;26:4
**maybe (1)**
5:10
**mean (2)**
15:22;19:16
**means (2)**
14:10;17:12
**mediation (1)**
24:19
**meet (2)**
16:4,5
**meeting (1)**
7:14
**mention (3)**
24:6,15;25:23
**mentioned (1)**
22:3
**merits (2)**
24:11;26:17
**mess (1)**
13:4
**message (1)**
19:12
**metaphor (1)**
10:4
**Mezz (14)**
5:3,19;6:15,21;
7:12,13,8:1,8,9,14,
16,19;12:15,16
**might (1)**
5:13
**Miller (1)**
6:19
**million (1)**
10:24
**minute (2)**
5:7;8:6

minutes (5)
5:10;6:2,3,4,6
misconduct (1)
21:10
mixed (1)
19:12
moment (2)
11:19;12:11
moments (1)
15:4
money (2)
24:22,25
moot (1)
8:18
moots (1)
8:3
more (2)
15:16;17:7
morning (11)
5:9;6:13,18,23;
7:2,5,21;9:14;12:12;
14:23;15:5
most (1)
21:11
motion (54)
7:9,18,24,25;8:2,4,
24,25;9:3,9,10,11,17,
20:10;5,22;11:2,12,
14,21,25;12:1,5,13,
15,17;13:2,2,8,19,
20:14:8,10,11;15:19,
25;16:19,21;17:4,12;
18:2,7,11,15;19:23;
20:16,18;21:6;25:4,
5,10,15,19,24
movant (1)
9:4
move (2)
12:4;21:3
moved (1)
14:18
movies (1)
10:5
much (1)
19:14
multiplier (1)
6:5
myself (1)
18:21

**N**

NAFTALIS (1)
4:2
narrative (4)
20:5,9,10;24:13
narratives (1)
25:17
NATAN (2)
4:9;6:25
necessary (1)
19:8
need (8)

5:21;9:7;13:19;
15:21;16:4;20:12;
24:24;26:18
needed (2)
11:9,12
neutral (1)
24:20
New (4)
4:5,14;5:3;6:15
next (7)
5:2;26:6,7,15,23,
24;27:2
night (4)
8:9;12:23;14:23;
25:5
noise (1)
21:9
nonsingle-asset (1)
16:11
note (1)
20:14
notice (1)
10:22
noticed (2)
13:22;14:21
number (3)
7:7;21:14;24:24
NY (2)
4:5,14

**O**

object (3)
11:8;20:18;25:12
objected (1)
16:22
objecting (1)
17:22
objection (3)
16:23;17:25;21:6
objections (2)
25:10,12
observation (1)
9:25
Obviously (15)
9:10,12;10:7,14,
15;11:7;15:14;
19:16,19;20:18;
21:21;22:7;23:21;
24:22;25:19
off (1)
22:13
Office (4)
7:14;11:18;23:3;
26:22
official (1)
6:20;10:11
often (2)
6:1;10:1
once (1)
11:8
one (11)
8:19;9:1,10;12:11;

13:12;14:17;15:11;
22:13;24:2,15;26:1
O'NEILL (9)
4:8;5:8,9,13,17;
6:24;26:5,5,10
only (4)
10:9;15:14;23:8;
24:6
open (1)
26:2
Operator (2)
5:18,20
opportunity (2)
12:12,21
opposition (1)
17:6
order (2)
10:16;25:13
orderly (1)
17:4
organization (1)
25:18
organizational (1)
15:1
original (1)
18:13
out (25)
6:4;10:2,6;11:14,
24;12:1;14:5;15:7,
12;16:10,24;17:1,2;
18:3;20:13,21;21:22,
25;22:4,14,15;23:14;
24:22;25:6;26:16
outside (1)
5:11
over-collateralized (1)
19:2
overlap (2)
8:13;25:6
overlapping (1)
9:24
overrule (1)
17:25
overruled (1)
16:23
oversee (1)
20:23
overview (1)
9:17
owed (1)
17:8
own (2)
12:4;23:6
Owner (17)
5:3;6:16;7:12,12,
17,23;8:1,10,14,19;
9:20;12:14;13:18;
14:4,16,24;15:1

**P**

papers (5)
9:8;13:24;16:16;

24:12;25:17
Park (1)
4:13
part (4)
9:17;14:15;21:1,5
particular (4)
22:22;23:22;
24:12;25:15
particularly (1)
24:24
parties (8)
5:19,25;7:20;14:2;
21:14;23:23,25;
24:18
partner (1)
6:24
party (2)
6:10;14:19
pass (1)
24:25
pending (2)
7:9,25
people (9)
5:13;9:7;10:1;
16:3;18:23;23:3,4;
24:23;26:16
percent (1)
6:5
perfect (1)
18:9
perfectly (1)
26:13
perhaps (1)
19:2
permissible (1)
13:3
permission (1)
9:16
person (2)
5:24;16:22
perspective (2)
7:10;8:15
petition (3)
8:11;14:23;21:24
phone (4)
5:7,14,25;21:22
piece (1)
23:22
piecemeal (1)
13:1
pieces (3)
15:7,12;17:20
places (1)
17:2
planning (1)
20:16
playbook (1)
24:8
Please (1)
6:9
PM (1)
27:5
point (7)

8:18;11:14;12:1;
13:4;14:21;16:24;
23:15
pointed (1)
11:24
points (2)
11:17;13:17
pool (1)
21:13
popular (1)
24:24
position (9)
8:14,17;11:4;15:6;
16:2;19:4;24:12,14;
26:11
positioning (1)
15:10
positions (1)
21:3
potential (1)
23:19
practice (2)
13:20;17:4
prejudice (1)
18:4
preliminary (1)
9:19
premature (4)
16:20,21;18:4;
20:12
prematurely (1)
17:13
presence (2)
10:3;11:22
present (1)
12:21
pretty (3)
16:19;19:14;23:11
priming (1)
20:17
pro (1)
7:6
probably (2)
22:15;24:4
problem (2)
5:15;16:5
problematic (1)
16:2
problems (1)
11:15
proceed (1)
9:13
proceedings (1)
27:5
process (3)
20:22,24;24:20
project (9)
8:20;15:2,8,9;
16:8;20:6;23:19,25;
25:18
promptly (1)
14:18
proper (1)

12:17
**properties (2)**
17:15;18:6
**property (10)**
15:2,7,12;16:8,9;
17:7,20;18:23;
21:11;23:22
**proposal (4)**
20:20;21:1,4;
26:14
**propose (1)**
26:11
**proposed (1)**
6:19
**prospect (1)**
19:25
**protect (1)**
19:22
**protected (1)**
19:19
**purposes (2)**
18:25;25:7
**push (1)**
26:23
**put (1)**
21:9

## Q

**quick (1)**
17:19
**quotes (1)**
23:11

## R

**raise (2)**
20:19;22:21
**rather (2)**
16:2;21:10
**reach (1)**
23:6
**reached (3)**
21:22,25;22:4
**read (2)**
9:6;16:15
**ready (2)**
6:3;16:18
**real (8)**
8:19;14:24;15:13;
16:5,11,12;19:12;
24:9
**realize (1)**
19:11
**really (6)**
7:18;11:2;18:11;
23:8,13;24:8
**reason (3)**
14:9;16:14;24:6
**reasonable (1)**
19:25
**reasoning (1)**
21:1

**reasons (1)**
14:18
**reassert (1)**
18:4
**receive (1)**
25:10
**received (1)**
21:25
**recent (1)**
10:23
**recently (2)**
9:11;23:22
**Recess (1)**
6:7
**recognize (1)**
10:16
**record (1)**
19:15
**reflective (1)**
14:17
**refuses (1)**
24:2
**regrets (1)**
24:15
**reiterate (1)**
21:4
**relating (1)**
9:19
**relation (1)**
21:15
**relevant (2)**
9:12;19:17
**relief (3)**
10:9;11:6,15
**remove (1)**
15:9
**reorganization (1)**
19:25
**repeat (1)**
9:7
**repeatedly (1)**
15:4
**replied (1)**
22:1
**reply (4)**
13:24;19:6,9,9
**representation (2)**
17:5,6
**representing (1)**
6:25
**request (7)**
5:4;13:13;14:6;
18:13,16;25:2,13
**requested (2)**
5:20;13:5
**requesting (1)**
23:3
**requests (1)**
23:12
**required (1)**
16:4
**requirements (1)**
16:3

**requiring (1)**
18:23
**respect (3)**
7:23;8:1,2
**respond (1)**
17:16
**responding (1)**
13:17
**response (1)**
22:1
**responses (1)**
21:20
**result (1)**
23:18
**retention (1)**
26:21
**right (27)**
5:2,24;6:9,17,22;
7:4,7,22;8:21,23;
11:16;13:11,25,25;
14:13;16:22;18:2;
19:17,18;20:4;
21:16;23:15;25:14,
16;26:13,24;27:2
**rights (3)**
10:8;15:16;16:12
**ripe (1)**
19:4
**rise (1)**
6:8
**road (1)**
20:2
**ROGOFF (33)**
4:7;6:23,23;9:14,
14,23;10:13,25;
11:16;12:7,10;13:6,
10,12,14,16,22;
14:11,14;15:23;
16:13;17:11,19,24;
18:1,20;19:8,21;
20:4,14;21:19;26:4;
27:1
**room (1)**
14:6
**rough (1)**
25:24
**Rule (1)**
18:8
**rules (1)**
13:4

## S

**sake (1)**
17:13
**sale (2)**
23:18,25
**salient (2)**
13:17;14:21
**sanction (1)**
23:13
**satisfies (1)**
18:8

**saying (5)**
13:7;16:7;17:17;
19:24;22:17
**schedule (2)**
25:24;26:16
**schedules (7)**
8:7,8,9,10,11;
12:22;14:3
**se (1)**
7:6
**seated (1)**
6:9
**second (2)**
15:24;22:12
**secured (5)**
7:1;15:17;21:15,
21;22:1
**seeking (1)**
11:14
**seem (1)**
25:16
**seemed (1)**
16:19
**seems (3)**
15:18;16:1,5
**selection (1)**
10:4
**send (1)**
18:22
**sensible (2)**
25:16;26:13
**serve (1)**
7:20
**served (1)**
25:9
**set (3)**
15:15;25:23;26:3
**shape (1)**
25:20
**shared (1)**
23:5
**Sharfstein (1)**
6:19
**shot (1)**
10:2
**side (5)**
8:16;9:4;11:1;
18:18,21
**sides (1)**
24:13
**signed (1)**
22:13
**significance (1)**
16:11
**significant (1)**
9:24
**similar (1)**
22:12
**simple (2)**
18:22;25:10
**simply (1)**
17:13
**single-asset (4)**

**14:24;15:12;**
16:11;24:9
**sit (1)**
8:16
**sitting (1)**
22:2
**six (1)**
12:23
**slow (3)**
15:24;16:12,14
**small (1)**
21:14
**solicit (1)**
22:12
**solicited (1)**
21:20
**somebody (1)**
11:8
**somehow (2)**
15:9;19:2
**someone (1)**
22:21
**somewhat (2)**
9:12;10:5
**Sorry (2)**
5:18;16:17
**sort (13)**
9:19;11:22,22,24;
15:10;18:13;20:16,
21;21:2,7;24:19;
25:23;26:14
**sorts (1)**
24:7
**sounds (2)**
15:25;16:8
**speak (2)**
5:21;22:9
**speaking (1)**
18:21
**speech (4)**
11:9,12,13;18:19
**speed (1)**
19:17
**spent (1)**
24:7
**spinning (1)**
21:2
**spirit (1)**
20:15
**stage (1)**
10:20
**stages (3)**
12:1,8;13:1
**stake (1)**
24:25
**stakeholder (1)**
14:19
**stand (2)**
7:8;14:5
**started (1)**
15:5
**state (3)**
11:21;18:25;19:21

**statement (1)**
19:1
**States (1)**
7:15
**status (7)**
7:10,12;8:7;9:19;
14:15;15:5;22:17
**stay (1)**
9:10
**still (6)**
5:18,23;6:10;
12:20;22:20;24:2
**story (1)**
10:1
**Street (1)**
8:20
**strikes (1)**
10:5
**subject (2)**
9:11;23:3
**substantial (1)**
8:13;15:9;25:6
**substantially (1)**
22:11
**substantive (1)**
25:20
**Suffice (1)**
9:8
**suggest (1)**
26:6
**suggestions (1)**
26:2
**supposed (1)**
23:13
**sure (6)**
5:6,22;8:3;14:7;
16:17;17:9
**surprised (2)**
23:2,5
**Susan (2)**
7:2;21:17
**Sutton (18)**
4:3;5:3,3,9,19;
6:15,16,25;7:12;
9:15,20;12:14,15,16;
13:18;14:16,23;15:1

**T**

**talk (1)**
26:1
**talking (1)**
10:23
**telephone (1)**
6:10
**telling (2)**
19:11,12
**ten (3)**
5:10;6:2,4
**term (1)**
15:3
**terms (4)**
19:17;21:14;

24:24;25:25
**therefore (1)**
19:3
**third-party (1)**
24:20
**though (1)**
22:11
**thoughts (1)**
26:4
**three (3)**
19:25;21:20;24:4
**throw (1)**
24:22
**throwing (1)**
19:14
**Thursday (2)**
26:23,24
**tie (1)**
13:2
**till (1)**
8:9
**times (3)**
10:1;17:2;24:5
**Timing-wise (1)**
25:25
**today (12)**
7:8;8:9;9:9;20:11;6;
19:23;20:1,8;22:10;
24:5,23;26:19,21
**today's (1)**
14:15
**together (1)**
5:13
**told (4)**
7:19;15:7;16:4;
20:15
**Tom (1)**
6:18
**tone (1)**
15:15
**took (1)**
24:16
**tried (1)**
18:12
**trot (1)**
23:13
**true (1)**
22:18
**Trustee (8)**
7:3,15;21:18,21;
22:2,7,9,18
**Trustee's (2)**
11:18;26:22
**try (2)**
20:17;21:3
**trying (2)**
21:8;23:24
**turn (1)**
8:23
**turnaround (1)**
17:20
**turned (2)**
16:24;17:1

**turns (1)**
6:5
**two (4)**
12:9,10;14:5;
15:11
**two-party (2)**
10:10,17
**type (1)**
20:24

**U**

**ultimately (2)**
13:1;23:25
**un (1)**
15:7
**uncommon (1)**
12:25
**under (4)**
13:3;14:1;17:18,
23
**underlying (1)**
20:6
**unfold (1)**
11:10
**unfolded (1)**
25:18
**unfortunately (1)**
15:18
**uninhabitable (1)**
19:25
**UNISON (1)**
27:4
**United (1)**
7:14
**unity (1)**
8:18
**unless (1)**
23:14
**unnecessary (1)**
13:19
**unsecured (4)**
6:20;10:12,19;
21:13
**up (2)**
11:21;18:14
**upon (2)**
11:3;24:1
**upside (2)**
23:19,24
**use (2)**
10:4;15:4
**usually (1)**
6:4

**V**

**validity (1)**
22:22
**various (1)**
23:23
**vehemently (1)**
21:10

**versus (1)**
16:11
**view (3)**
10:6,10;11:23
**viewpoints (1)**
23:5
**vigorously (1)**
26:16

**W**

**wade (1)**
19:13
**waded (1)**
16:16
**wait (2)**
18:24;26:1
**walk (1)**
18:13
**wants (1)**
26:22
**warning (1)**
10:2
**waste (1)**
16:15
**waterfall (1)**
24:1
**way (3)**
18:14;21:11;25:20
**week (5)**
12:9;26:6,8,15;
27:2
**weeks (3)**
12:9,10,23
**weigh (2)**
21:18;24:20
**weight (1)**
12:4
**Westerman (1)**
6:19
**What's (5)**
8:7;14:20;20:6;
21:11;24:13
**where's (1)**
11:1
**Whereupon (1)**
27:5
**who's (1)**
5:24
**wide (1)**
14:19
**willing (1)**
20:20
**wise (1)**
14:2
**wish (2)**
21:16;25:14
**within (1)**
8:12
**without (3)**
18:3,6,23
**wonder (1)**
5:10

**wondering (1)**
5:8
**work (2)**
20:21;26:16
**works (1)**
26:23
**worth (1)**
25:1
**writing (2)**
21:22;24:13

**Y**

**yesterday (6)**
6:15;7:11,17,19;
8:11;13:24
**York (2)**
4:5,14

**Z**

**Zucker (1)**
6:19

**1**

**10016 (1)**
4:14
**10036 (1)**
4:5
**11 (3)**
12:6;14:20;18:8
**11:20 (1)**
6:7
**11:48 (1)**
6:7
**1177 (1)**
4:4
**12:16 (1)**
27:5
**14th (1)**
7:13
**181 (1)**
10:23

**2**

**2 (1)**
4:13

**5**

**58 (6)**
4:3;5:3;6:16,25;
7:12;9:15
**58th (1)**
8:20